**UNITED STATES DISTRICT COURT**
**District of Massachusetts**

| | |
|---|---|
| **Comcast of Massachusetts I, Inc. ("Comcast")**         ) | Case No.: **1:05-cv-11835-RGS** |
| )  | |
| ) | **PLAINTIFF'S MOTION FOR** |
| Plaintiff,                                                   ) | **DEFAULT JUDGMENT** |
| ) | |
| vs.                                                          ) | |
| ) | |
| **Virginia Cowan**                                           ) | |
| ) | |
| Defendant                                                    ) | |
| ) | |

Plaintiff hereby moves this Court for a Judgment by Default in the above-entitled action against the Defendant. The Plaintiff also requests that this Court assess non-Liquidated Damages after considering the Plaintiff's filings made herewith. The Plaintiff contends that the Court should be able to assess non-liquidated damages in this action based upon the facts as determined through the Defendant's default all in accordance with Fed. R. Civ. P. 55(b)(2). However, should this Court determine that testimony is necessary or even helpful for the assessment of non-liquidated damages, the Plaintiff requests that such a hearing be scheduled.

In support of this Motion, Plaintiff submits:

1. That a Default was entered against the Defendant on January 17, 2006.

2. That the Defendant has still failed to reply or otherwise defend the claims set forth in Plaintiff's complaint;

3. That the Defendant is not an infant or incompetent;

4. That the Defendant is not in the military service; and,

5. That the Plaintiff is entitled to damages and other civil remedies as set forth below.

In further support of this Motion, please see:

1. Memorandum of Law in Support of Plaintiff's Motion for Default Judgment.

2. Affidavit of Attorney John M. McLaughlin.

3. Affidavit of Comcast employee.

4. Proposed Order of Default.

**WHEREFORE** Plaintiff respectfully requests that this Court enter Default Judgment in favor of the Plaintiff and against the Defendant for the following:

Pursuant to all of the above, the Plaintiff is entitled to a Default Judgment as follows:

1. $7,000.00 in baseline statutory damages pursuant to Title 47 U.S.C. § 553(c)(3)(A)(ii) for the violation of 47 U.S.C. § 553(a);

2. costs $295.90 pursuant to 47 U.S.C. 553(c)(2)(C);

3. The issuance of a permanent injunction pursuant to 47 U.S.C. § 553 (c)(2)(A) utilizing the following language or language of a similar nature:

> "The Court hereby enjoins the Defendant, the Defendant's respective agents, servants, employees, and any person or entity controlled directly or indirectly by the Defendant or acting on the Defendant's behalf from the further modification and/or use of electronic equipment designed for the unauthorized interception of signals in violation of provisions of Title 47";

4. Post-Judgment interest running on the judgment pursuant to 26 U.S.C. § 1961; and,

5. Attorney's fees of $600.00 pursuant to Title 47 U.S.C. 553(c)(2)(C).

                              Respectfully Submitted for the Plaintiff,
                              Comcast of Massachusetts I, Inc.
                              By Its Attorney,

<u>2/16/2006</u>                              <u>/s/ John M. McLaughlin</u>
Date                                  John M. McLaughlin, Esq.
                                  **Green, Miles, Lipton & Fitz-Gibbon LLP**
                                  77 Pleasant Street
                                  P.O. Box 210
                                  Northampton, MA 01061-0210
                                  BBO No 556328

### CERTIFICATE OF SERVICE

I, John M. McLaughlin, attorney for the Plaintiff, hereby certify that on _____, I served a copy of the foregoing Motion for Default Judgment, Memorandum of Law, Proposed Order, Affidavit of John M. McLaughlin were sent via first class mail, postage pre-paid to:

Virginia Cowan
Sandy Lane
Wilmington, MA 01887

_____
John M. McLaughlin

**UNITED STATES DISTRICT COURT**
**District of Massachusetts**

| | |
|---|---|
| **Comcast of Massachusetts I, Inc.** )<br>   )<br>   Plaintiff, )<br>   )<br>vs. )<br>   )<br>**Virginia Cowan** )<br>   )<br>   Defendant )<br>   ) | Case No.: 1:05-cv-11835-RGS<br><br>**AFFIDAVIT OF JOHN M.**<br>**MCLAUGHLIN, ESQ.** |

Now comes the affiant, and makes this his sworn statement, under the pains and penalties of perjury, of his own personal knowledge.

### GENERAL FACTUAL ASSERTIONS

1. I, John M. McLaughlin, represent the Plaintiff in the above-entitled action.

2. I am a member of the Law Firm of Green, Miles, Lipton, & Fitz-Gibbon LLP.

### FACTUAL ASSERTIONS AS TO ATTORNEY'S FEES

3. My usual hourly rate is $200.00 per hour. These rates are more than reasonable for telecommunication civil litigation specialists.

4. I have been a member of the Federal Communications Bar Association and I have been heavily involved in telecommunications anti-Piracy litigation since the early 1990's. I have represented Comcast, DIRECTV and numerous ATTB, MediaOne, and/or Continental Cablevision corporate entities in hundreds of cases.

5. The time records have been edited to remove confidential communications with the client. The Plaintiff reserves the right to amend its claim for attorney's fees and costs should Plaintiff's Counsel have to attend a Default Hearing in Boston and Plaintiff may also bear certain costs with reference to said hearing. The

details of the time records to-date are set forth below. Also, I have already reduced the billable time from the actual time spent on reviewing and sorting my time records to take into account the first circuit case of *Brewster v. Dukakis*, 3 Fed.3d 488, (1st Cir. 1993) which provides that attorney's fees for work on affidavit for fees should be billed at a reduced rate.

**ATTORNEY'S HOURS:**

| Date | Description | Hours |
|---|---|---|
| 09/7/05 | Review Draft of Complaint | .30 |
| 12/12/05 | Review Entry for Default | .20 |
| 1/31/06 | Review Motion for Default | .50 |
| 2/13/06 | Write Memo and work on Affidavit | 2.00 |

**SUBTOTAL of hours**                                          3.00
At $200.00 per hour

**SUBTOTAL amounts**                                      **$600.00**

**Total Amount**                                               **$600.00**

6. No attorney's fees have been paid by the Plaintiff in the case at bar because the case is covered by a contingency fee agreement and there has not been and may never be any actual recovery.

## OTHER FACTUAL ASSERTIONS

7. The Default of the Defendant has been entered for failure to appear in this action.

8. The undersigned believes the Court can assess statutory damages in this matter without testimony. Yet, if the Court believes testimony is necessary or even helpful, the Plaintiff will fully cooperate and provide fact witnesses and/or expert witnesses if required.

9. On information and belief, the Defendant is not an infant or an incompetent and the Defendant is not in the military service

Subscribed and sworn to, under the pains and penalties of perjury, this 16th day of February, 2006.

/s/ John M. McLaughlin
John M. McLaughlin (BBO No. 556328)
**Green, Miles, Lipton & Fitz-Gibbon LLP**
77 Pleasant Street
P.O. Box 210
Northampton, MA 01061-0210
Telephone: (413) 586-0865

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Comcast of Massachusetts I, Inc. ) | Case No.: **1:05-cv-11835-RGS** |
| ) | |
| Plaintiff, ) | |
| ) | **AFFIDAVIT OF** |
| vs. ) | **DONNA JURCZAK** |
| ) | |
| Virginia Cowan ) | |
| ) | |
| Defendant ) | |

Now comes the affiant, and makes this her sworn statement, under the pains and penalties of perjury, and of her own personal knowledge.

1. My name is Donna Jurczak.

*Training, Qualifications*

2. I am employed by Comcast Cable Communications as an Area Piracy Specialist. I was also employed by Comcast's corporate predecessor as a Special Project Auditor.

3. Comcast is the successor corporation to AT&T Broadband. For the purposes of simplicity I will refer to Plaintiff as "Comcast", even if at the reference point in time the cable company was then called AT&T Broadband.

4. Through on-the-job training and years of experience, I have become familiar with the technology utilized by the Plaintiff. Specifically, I have become familiar with:

    a. Analog scrambling and descrambling methodology,

    b. Related cable hardware technology;

    c. Black market descrambling technology.

    d. The methodology of testing Comcast's own converters/descramblers to determine if such devices have been covertly modified to receive unauthorized interception of signals.

Page 1

5. I have examined hundreds of black market cable television descrambling devices and hundreds of Comcast issued converters/descramblers that have been covertly modified to receive unauthorized interception of signals.

6. I have been trained and I am familiar with the testing of cable television devices to determine if the devices have the ability to descramble scrambled analog signals without the authorization of the cable television company.

*Comcast's System and Piracy*

7. In order to protect its signals and maintain the value of its services, Comcast, at all times pertinent to this case, encrypted and/or scrambled, in an analog fashion, some of their signals such that those channels would first have to have been decoded by addressable electronic decoding equipment (See "addressable converters/descramblers" below) in order to be viewed clearly on a television receiver.

8. Comcast utilized analog encryption to encrypt and/or scramble signals for:

    a. premium channels, such as HBO, Showtime, and Cinemax; for which subscribers would have paid a separate monthly subscription fee; and

    b. Pay-per-view events, such as a specific movie, concert or sporting events, for which subscribers would have paid a specific one time charge to view each event.

9. Comcast issued/leased analog devices called "addressable converters/descramblers" to most of its subscribers. These devices converted signals for older televisions that were not "cable ready" and, more significantly, they descrambled analog signals based upon the instructions that Comcast sent to the addressable converter/descrambler. The crucial element of the addressable converter/descrambler was that it was *addressable*. That meant Comcast could "address" the descrambler. "Addressability" refers to the descrambler's ability to descramble signals based *only* upon the instructions that it receives from the cable company.

10. Unfortunately, it was also possible to modify or have some third party modify an addressable converter/descrambler to covertly create a non-addressable coaxial cable analog descrambler. Such a modification was often called "chipping" a box. Chipping a box is where an individual places certain electronic equipment, often called "chips", inside the electronic circuitry of a legitimate, addressable converter/descrambler to modify the device in such a way that it then becomes a non-addressable descrambling device. The modified converter/descrambler could then not be addressed with instructions; instead it would simply descramble Comcast's scrambled signals without any instructions from Comcast.

11. Take note of the fact that an individual in possession of an unauthorized non-addressable descrambling device would still need to purchase some cable television signals from Comcast in order to allow the scrambled signals to enter the home and thereafter be covertly descrambled.

12. Take note of the fact that an unauthorized non-addressable descrambling device simply descrambles the scrambled analog channels that are in the individual's home

without authorization; it does not pull in the non-scrambled stations from the telephone pole. The non-premium cable television stations (e.g. MTV, The History Channel, etc.) are offered to subscribers in groupings of channels ("tiers"). These channels are either delivered in groups to the subscriber in a non-scrambled fashion or they are simply not delivered into the home at all. This explains why an individual with an unauthorized non-addressable descrambling device might still be paying a significant amount to the cable television company while utilizing a descrambler to descramble the premium channels. If an individual with an unauthorized non-addressable descrambling device wanted access to *all* stations, that individual would still have to pay to have all the non-scrambled stations to come into the home. The individual could then use the unauthorized non-addressable descrambling device to descramble the premium stations and pay-per-view signals.

**The Defendant**

13. I am familiar with the business records of Comcast associated with the Defendant, Virginia Cowan.

14. Two particular converters/descramblers, bearing serial numbers CD59ACHCS and CJ69ABBVH, were issued by Comcast to the Defendant on August 6, 1997.

15. Converters/descramblers CD59ACHCS and CJ69ABBVH were returned to Comcast by the Defendant on September 10, 2002.

16. Shortly after converters/descramblers CD59ACHCS and CJ69ABBVH (hereinafter the "devices") were returned to the Plaintiff, I tested the devices and the tests evidenced the fact that these devices had been electronically modified while in the possession of the Defendant so as to allow for the unauthorized reception of secured cable system programming including premium and pay per view channels.

17. Significantly, the account history reveals that the Defendant *did not* order any premium channels or pay-per-view offerings while in possession of the devices. This Defendant's account history also reveals that the Defendant *did* purchase non-premium stations while in possession of the device

18. An account history that evidences no purchases of premium channels and no purchases of pay-per-view offerings is consistent with the covert use of an unauthorized non-addressable descrambling device. It should also be realized that an account history that evidences the subject individual paying for non-premium cable television channels is also is consistent with the covert use of a descrambling device.

19. Based upon the facts that costs of signals from August 1997 until December 2002; this represents a 61 month period of time may now be relevant. I will refer to this 61 month period as the pertinent period of time.

***Damages***

20. During the pertinent period of time charges and offerings varied significantly but taking into account the length of time, the variations in price and variations in offerings, it is reasonable to state that the Defendant, through the use of the device, would have had access to all of the:

    a. Premium channels with an *approximate on average* price of $65.00 per month. This $65.00 figure represents the value of the premium channels the Defendant had access to over and above the non premium stations he was actually paying for.

    b.  Pay per view movie offerings with an *approximate on average* price of $3.95 per movie. There were numerous movies offered per month.

    c.  Adult pay per view movie offerings with an *approximate on average* price of $8.00 per movie. There were numerous Adult movies offered per month

    d.  Special event pay per view offerings (e.g.; boxing or wrestling match) with an *approximate on average* price of $30.00 per special event.  On average there was at least one special event per month.

21. Also of assistance in calculating the amount of unauthorized interception is the fact that Comcast did a detailed analysis of its legitimate, paying subscribers in a similar New England franchise as to their pay-per-view purchasing in the month of February, 2003.  This analysis showed that a statistically significant number (.17%) of its legitimate, paying, high-end purchasers purchased fourteen (14) or more pay-per-view movies during that particular month, an average cost of $55.30 per month.

22. If legitimate, high end, paying subscribers of Comcast purchase fourteen or more pay-per-view movies in a given month it can be inferred that individuals like the Defendant, utilizing a descrambler without any concern for costs, would also view at least as many pay-per-view movies as the legitimate high end paying subscribers of Comcast.  It can also be inferred that that individuals like the Defendant, utilizing a descrambler without any concern for costs, would make a significant number of purchases of the more expensive adult offerings in addition to or in lieu of the less expensive pay-per-view movies.

Subscribed and sworn to, under the pains and penalties of perjury, this 15th day of February, 2006.

_____
Donna Jurczak

**UNITED STATES DISTRICT COURT**
**District of Massachusetts**

| | |
|---|---|
| **Comcast of Massachusetts I, Inc.** ) <br> **("Comcast")** ) <br>     Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> **Virginia Cowan** ) <br> ) <br>     Defendant, ) <br> ) <br> _____ ) | Case No.: **1:05-cv-11835-RGS** <br><br> **ORDER OF** <br> **DEFAULT JUDGMENT** |

    The Court, having considered the Plaintiff's Motion for Default Judgment and the accompanying documentation filed with said motion, finds that the Plaintiff is entitled to a Default Judgment as follows:

1.    $_____ in baseline statutory damages pursuant to Title 47 U.S.C. § 553(c)(3)(A)(ii) for the violation of 47 U.S.C. § 553(a);

2.    costs $_____ pursuant to 47 U.S.C. 553(c)(2)(C);

3.    The issuance of a permanent injunction pursuant to 47 U.S.C. § 553 (c)(2)(A) utilizing the following language or language of a similar nature:

    "The Court hereby enjoins the Defendant, the Defendant's respective agents, servants, employees, and any person or entity controlled directly or indirectly by the Defendant or acting on the Defendant's behalf from the further modification and/or use of electronic equipment designed for the unauthorized interception of signal in violation of provisions of Title 47; and,

4.    Post-Judgment interest running on the judgment pursuant to 26 U.S.C. § 1961.

5.    Attorney's fees of $_____ pursuant to Title 47 U.S.C. 553(c)(2)(C).

**SO ORDERED**.

Dated: _____          _____
                                       United States District Court Judge